**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
NORFOLK DIVISION**

**RESCUE PHONE, INC.,**

    **Plaintiff and Counter Defendant,**

    v.

**ENFORCEMENT TECHNOLOGY GROUP, INC.,**

**PROFESSIONAL SAFETY, INC.,**

    **and,**                                           **CIVIL ACTION NO.: 2:07cv58**

**KEVIN L. OTTO,**

    **Defendants, Counter Claimants and Third Party Plaintiffs,**

    v.

**SAMUEL HICKS,**

    **Third Party Defendant.**

**OPINION and ORDER**

The matter before the Court is a patent infringement dispute, wherein Plaintiff has filed suit seeking to invalidate a patent, requesting a declaratory judgment of non-infringement, and asserting related violations by Defendants. Docs. 1 (Complaint filed February 8, 2007), 11 (Amended Complaint filed April 12, 2007). Presently before the Court is Defendants' Motion to Dismiss Count VI (Attempted Monopolization) and Count VII (Tortious Interference with Contractual Relations) of the Amended Complaint. Doc. 13 (Motion to Dismiss filed April 20, 2007). On Wednesday, June 6, 2007, the

Court convened a hearing on Defendants' Motion to Dismiss, and ruled from the bench. Accordingly, for the reasons that follow, Defendants' Motion to Dismiss is **DENIED**.

I. PROCEDURAL HISTORY[1]

On February 8, 2007, Rescue Phone, Inc. ("Rescue Phone" or "Plaintiff") filed its Complaint seeking declaratory judgment that its "products do not infringe any valid claims of United States Patent No. 6,442,240 (the "'240 patent"), and that all claims of the '240 patent are invalid." Doc. 1 at 2. The Complaint also charged, in pertinent part, a "Violation of § 2 of the Sherman Anti-Trust Act - Attempted Monopolization." Doc. 1 at 5. Defendants Enforcement Technology Group, Inc. ("ETGI"), Professional Safety, Inc. ("PSI"), and Kevin L. Otto ("Otto") filed their Answer and Counterclaim on March 21, 2007. Doc. 4.

On April 12, 2007, the Court entered a Consent Order on Rescue Phone's Motion for Leave to Amend, allowing Rescue Phone to file an amended Complaint. Doc. 10. On the same day, Plaintiff's Amended Complaint was filed. Doc. 11.

Defendants[2] ETGI and Otto filed their Motion to Dismiss Counts VI and VII of the Amended Complaint, and supporting Memorandum, on April 20, 2007. Docs. 13 (Motion), 14 (Memorandum). Additionally, on the same day, Defendants filed their Answer, Affirmative Defenses, Counterclaim and Third Party Complaint. Doc. 16.

---

[1] This procedural history section does not necessarily encompass the entire procedural background of the case, but rather only addresses those events relevant to the current issue(s) before the Court.

[2] For the purposes of this Memorandum, ETGI and Otto will be referred to collectively as "Defendants" even though PSI did not join in their motion to dismiss. Doc. 14 at 1.

Plaintiff filed its Memorandum in Opposition to Defendant's Motion to Dismiss on May 7, 2007. Doc. 17. On May 16, 2007, Defendants filed their Reply Memorandum in Support of Their Motion to Dismiss. Doc. 20.

## II. STANDARD OF REVIEW

### A. Motion to Dismiss

Defendants' Motion asserts Rescue Phone's claims under Count VI ("Attempted Monopolization" or "Count VI") and Count VII ("Tortious Interference" or "Count VII") fail to state a claim upon which relief can be granted under FED. R. CIV. PROC. 12(b)(6). Doc. 14. "For the purposes of a motion to dismiss, the material allegations of the complaint are taken as admitted." Jenkins v. McKeithen, 395 U.S. 411, 421 (1969). Also, "the complaint is to be liberally construed in favor of plaintiff[, and] should not be dismissed unless it appears that appellant could prove no set of facts in support of his claim which would entitle him to relief." Jenkins, 395 U.S. at 421-22 (citing FED. R. CIV. PROC. 8(f) and Conley v. Gibson, 355 U.S. 41, 45-46 (1957)) (internal quotations omitted). Liberal construction is afforded in light of the notice pleading requirements of FED. R. CIV. PROC. 8(e)(1), which mandates "[e]ach averment of a pleading shall be simple, concise, and direct." Jenkins, 395 U.S. at 421. While alleged facts are accepted as true for the purposes of a motion to dismiss, conclusions of law will not insulate the Complaint from dismissal where sufficient factual allegations are not otherwise established. Randall v. United States, 30 F.3d 518, 522 (4th Cir. 1994); Trigon Ins. Co. v. Columbia Naples Capital, L.L.C., 235 F. Supp. 2d 495, 500 (E.D. Va. 2002) (Hudson, J.) (citation omitted).

B. <u>Sherman Act Claim</u>

Specifically, regarding a Sherman Act claim like the one forwarded in Count VI of the Amended Complaint, the complaint must allege facts, which are neither vague nor conclusory, sufficient to establish each element of the purported violation. Doc. 11 at 11-13; <u>Dickson v. Microsoft Corp.</u>, 309 F.3d 193, 201-02 (4th Cir. 2002) (citations omitted). Furthermore, "[a] court cannot properly assume that a claimant can prove facts that have not been alleged in the complaint." <u>Masco Contr. Servs. East, Inc. v. Beals</u>, 279 F. Supp. 2d 699, 704 (E.D. Va. 2003) (Smith, J.). Motions to dismiss Sherman Act claims should be granted "very sparingly and only if it appears that plaintiff can prove no set of facts in support of his claim that would entitle him to relief." <u>Masco</u>, 270 F. Supp. 2d at 704 (citation omitted); <u>Hospital Bldg. Co. v. Trustees of Rex. Hosp.</u>, 425 U.S. 738, 746-47 (1976).

III.  COUNT VI: § 2 OF SHERMAN ACT - ATTEMPTED MONOPOLIZATION

A.  <u>Legal Principles</u>

Section Two of the Sherman Act "addresses the actions of single firms that monopolize or attempt to monopolize, as well as conspiracies and combinations to monopolize." <u>Spectrum Sports, Inc. v. McQuillan</u>, 506 U.S. 447, 456 (1993). In order to prove Attempted Monopolization, Plaintiff must establish:

1. That the defendant has engaged in predatory or anticompetitive conduct with;
2. A specific intent to monopolize; and
3. A dangerous probability of achieving monopoly power.

<u>Sun Microsystems, Inc. v. Microsoft Corp.</u>, 333 F.3d 517, 534 (4th Cir. 2003) (citing <u>Spectrum Sports</u>, 506 U.S. at 456). "[D]emonstrating the dangerous probability of

monopolization in an attempt case also requires inquiry into the relevant product and geographic market and the defendant's economic power in that market." Spectrum Sports, 506 U.S. at 459.[1] The relevant market product concerns "commodities reasonably interchangeable by consumers for the same purposes." United States v. E.I. du Pont de Nemours & Co., 351 U.S. 377, 395 (1956). Facts relevant to a determination of "a dangerous probability of success" in monopolizing the market include market share, ease of entry into the market, and unjustified exclusionary conduct. M&M Med. Supplies & Serv., Inc. v. Pleasant Valley Hosp., Inc., 981 F.2d 160, 168 (4th Cir. 1992). A presumptive test is applied, which emphasizes the importance of market share factor of the analysis, providing:

1. Claims of less than 30% market shares should presumptively be rejected;
2. Claims involving between 30% and 50% shares should usually be rejected, except when conduct is very likely to achieve monopoly or when conduct is invidious, but not so much so as to make the defendant per se liable; and
3. Claims involving greater than a 50% share should be treated as attempts at monopolization when the other elements for attempted monopolization are also satisfied.

M&M, 981 F.2d at 168. This sliding scale evidence evaluation tool is noted only so far as it emphasizes the importance of pleading market share, as the Court accepts factual allegations as true at the motion to dismiss stage.[2] While market share is an important

---

[1] Stated differently, "proof of these elements requires definition of the relevant market that the defendant is allegedly attempting to monopolize." Sun Microsystems, 333 F.3d at 534 (citing Spectrum Sports, 506 U.S. at 455). The relevant market is shown by presenting proof of, or alleging in this instance, (1) the relevant product, and (2) geographic market(s). Satellite Television & Associated Res., Inc. v. Cont'l Cablevision of Virginia, Inc., 714 F.2d 351, 355 (4th Cir. 1983); Consul, Ltd. v. Transco Energy Co., 805 F.2d 490, 493 (4th Cir. 1986) ("Proof of a relevant market is the threshold for a Sherman Act § 2 Claim. The plaintiff must establish the geographic and product market that was monopolized.").

[2] Defendants cite numerous authority from outside the Fourth Circuit to show the importance of market share in an attempted monopolization suit. See Doc. 14 at 9-10.

factor, "its relevance is tempered by evidence of the other two elements of the claim." M&M, 981 F.2d at 168. For instance, "[c]ompelling evidence of an intent to monopolize or of anticompetitive conduct reduces the level of market share that need[s] to be shown." M&M, 981 F.2d at 168.

## B. Defendant's Contentions

Defendants contend Rescue Phone's Attempted Monopolization claim is insufficient for failing "to plead the relevant product or geographic market," and neglecting to "allege any facts demonstrating ETGI or Otto's market power." Doc. 14 at 3, 7, 9. Additionally, Defendants argue the Amended Complaint "does not and cannot allege how an individual employee, Otto, could be held personally liable for attempted monopolization." Doc. 14 at 7.

## C. Analysis

### 1. *Relevant Product and Geographic Market*

Plaintiff alleges "Rescue Phone provides hostage negotiation telephone systems to federal and state law enforcement entities throughout the United States, including numerous individuals and entities within the jurisdiction of this Court." Doc. 11 at 1. Also, Rescue Phone states "ETGI is engaged in the business of selling hostage

---

As the Fourth Circuit has defined principles detailing the factual predicate of a dangerous probability of market monopolization showing, these authorities are not considered as superfluous. Defendants also mention several non-precedential authorities to establish the propositions that merely alleging a conclusion of law, such as "there is a dangerous probability of success," will not survive a motion to dismiss, and failure to adequately plead facts of market share causes a defective complaint. Doc. 14 at 11-12. Because these propositions are discussed in precedential opinions, no further consideration of these authorities is necessary. Moreover, Defendants ask the Court to consider Rescue Phone's website in denying Plaintiff's alternative request to amend its complaint. Doc. 14 at 13 n.3. The Court cannot factor this alleged fact into the Court's conclusion as the Complaint must be considered on its face under the present standard of review. Additionally, as Defendants' motion is denied, this argument is moot.

negotiation systems, and advertises and sells such products to customers within the jurisdiction of this Court." Doc. 11 at 1-2. Otto is the inventor of the '240 patent, which regards ETGI's hostage negotiation systems, and is an employee of ETGI. Doc. 11 at 1-2; Doc. 11, Ex. A. Furthermore, the Amended Complaint asserts the "relevant market in which both ETGI and Rescue Phone operate is the governmental law-enforcement sector." Doc. 11 at 11.

Defendants forward two arguments that Rescue Phone's claim of Attempted Monopolization is legally insufficient for failure to plead facts regarding product market. Doc. 14 at 8.

First, Defendants state the difference between "hostage negotiation telephone systems" sold by Rescue Phone, and "hostage negotiation systems" sold by ETGI causes the claim to fail as a matter of law. Doc. 14 at 8. Defendants urge their system "includes covert video and audio technology in addition to the staple telephone communication offered by [Rescue Phone]." Doc. 14 at 8 (citing Doc. 16 at ¶¶ 5-7 (Defendant's Counterclaim)). Initially, the Court cannot consider the factual conclusions of the Defendants as alleged in their counterclaim in ruling on this motion. See Jenkins, 395 U.S. at 421-22. Similarly, the Court must accept that Plaintiff can prove the facts as alleged, namely that both ETGI and Rescue Phone deal in the same product, in light of the product definition, which entails "commodities reasonably interchangeable by consumers for the same purposes." du Pont, 351 U.S. at 395. In light of the liberal construction requirements and the obligation of notice pleading, the Court concludes Defendants' semantic argument regarding the inclusion or omission of the word "telephone" is without merit. Jenkins, 395 U.S. at 421-22; FED. R. CIV. PROC. 8.

Second, Defendants maintain Rescue Phone "also fails to define the relevant market because Count VI does not identify the geographic boundaries of the market." Doc. 14 at 8. To the contrary, Plaintiff asserts the market is the governmental law-enforcement sector within the United States. Doc. 11 at 1, 11. Defendant argues, however, that Plaintiff only states ETGI sells its products within the jurisdiction of this Court. Doc. 11 at 2. Certainly, an ambiguity is shown in the Complaint, however, the disparity cannot sustain the granting of Defendant's motion, as the facts must be construed liberally in favor of Plaintiff. Jenkins, 395 U.S. at 421-22. Whether the Court considers the relevant geographic market to include only the Eastern District of Virginia or the entire United States, either construction shows the claim to be properly alleged as to this element.

### 2. *Market Power and Otto*

Defendants also argue Rescue Phone's Attempted Monopolization allegation is defective for failing to assert Defendants' dangerous probability of monopolization. Doc. 14 at 9. As noted, facts relevant to showing a dangerous probability of monopolization include market share (which is clearly the most important factor), ease of entry into the market, and unjustified exclusionary conduct. M&M, 981 F.2d at 168. Additionally, a weak showing of market power can be offset by more compelling evidence of intent to monopolize or anticompetitive conduct. M&M, 981 F.2d at 168. Defendants assert that the only allegation regarding market power in the Amended Complaint concludes there is "a dangerous possibility that ETGI and Otto will obtain monopoly power in the relevant marketplace in government law enforcement." Doc. 14 at 11 (citing Doc. 11 at ¶ 81).

The Court agrees that this averment should not bear on the Court's deliberation as it is a conclusory statement of law. Randall, 30 F.3d at 522.

However, there are additional statements in the Amended Complaint that Defendants have not appreciated. Moreover, Defendants have cited no precedential authority for the proposition that a Plaintiff must allege market share as part of its Attempted Monopolization claim, but have instead noted numerous non-binding cases. Doc. 14 at 11-12. Plaintiff does not allege market share in its Complaint, but does make several contentions regarding other factors which either bear on market power or mitigate the necessity to show market power. First, Plaintiff asserts ETGI and Otto acted intentionally, fraudulently and recklessly in obtaining the '240 patent. Doc. 11 at 11. Second, Plaintiff alleges ETGI's attempted enforcement of its fraudulently obtained patent threatens market competition by dissuading consumers from purchasing Rescue Phone's products. Doc. 11 at 12. Third, Plaintiff asserts ETGI has made "statements to customers in the relevant marketplace that Rescue Phone does not have the right to sell its products in violation of ETGI's patent" which have damaged, in conjunction with other ETGI conduct, Rescue Phone's business success. Doc. 11 at 12. ETGI and Otto have obtained a website address which is extremely similar to Rescue Phone's trademark. Doc. 11 at 13. These allegations, considered true as alleged for the purposes of this motion, show anticompetitive and unjustified exclusionary conduct, as well as indicate an intent to monopolize the market. Accordingly, because "claims of less than 30% market shares should presumptively be rejected," it is clear no minimum market share is absolutely required to evidence an Attempted Monopolization claim as long as other evidence supports the claim, such as anticompetitive acts, unjustified exclusionary

conduct and intention to monopolize, which have been alleged in this case.  M&M, 981 F.2d at 168.  Because Plaintiff's factual allegations must be accepted as true, the Court concludes Plaintiff has adequately alleged Attempted Monopolization sufficient to withstand a motion to dismiss, albeit the failure to allege market share weakens the claim considerably.

The Court agrees with Defendants that it seems unlikely that Otto could be liable for Attempted Monopolization as an employee of ETGI and the inventor of the '240 patent.  Doc. 14 at 7.  However, Rescue Phone alleges conduct by Otto showing anticompetitive and unjustified exclusionary conduct, as well as an intention to monopolize.  Doc. 11 at 11-13.  As stated, Section Two of the Sherman Act "addresses the actions of single firms that monopolize or attempt to monopolize, as well as conspiracies and combinations to monopolize."  Spectrum Sports, 506 U.S. at 456.  The Court is aware of only one case where an employee was sued for Attempted Monopolization, and the court's opinion did not address whether the Attempted Monopolization claim could be brought against an employee.  Giben Am., Inc. v. Schelling Am., Inc., No. 94-1939, 1995 U.S. App. LEXIS 4789, at *1-4 (4th Cir. March 10, 1995) (unpublished).  As Otto is an employee of ETGI, it does not appear Plaintiff can prove Otto has any market share apart from that held by ETGI.  Doc. 11 at 2.  However, the United States Court of Appeals for the Fourth Circuit ("Fourth Circuit") has opined that a claim for Attempted Monopolization does not automatically fail despite a low market share showing.  M&M, 981 F.2d at 168.  Accordingly, the Court concludes Plaintiff has adequately stated a claim for relief against Otto for Attempted Monopolization.

IV.  COUNT VII: TORTIOUS INTERFERENCE WITH CONTRACT RELATIONS

A.  Legal Principles

A claim of Tortious Interference requires proof of the following elements, under Virginia law:

1. The existence of a valid contractual relationship or expectancy;
2. Knowledge of the relationship or expectancy on the part of the interferor;
3. Intentional interference inducing or causing a breach or termination of the relationship or expectancy; and
4. Resultant damage to the party whose relationship or expectancy has been disrupted.

Commerce Funding Corp. v. Worldwide Security Servs. Corp., 249 F.3d 204, 210 (4th Cir. 2001) (citing Chaves v. Johnson, 230 Va. 112, 120, 335 S.E.2d 97, 102 (1985)).

"In addition, for a tortious interference with economic advantage claim, the claimant must also allege that the adverse party employed 'improper methods.'"  Masco, 279 F. Supp. 2d at 709 (citing Commerce Funding, 249 F.3d at 214)).  "Methods of interference considered improper are those means that are illegal or independently tortious, such as violations of statutes, regulations, or recognized common-law rules[, and] . . . may include violence, threats or intimidation, bribery, unfounded litigation, fraud, misrepresentation or deceit, defamation, duress, undue influence, misuse of inside or confidential information, or breach of a fiduciary relationship."  Duggin v. Adams, 234 Va. 221, 227-28, 360 S.E.2d 832, 836-37 (1987) (citations omitted).  To prove the existence of a business expectancy, "the plaintiff must establish 'a probability of future economic benefit, not a mere possibility,'" and must point out a specific contract or expectancy.  Southprint, Inc. v. H3, Inc., 208 Fed. Appx. 249, __ (4th Cir. 2006) (unpublished) (quoting Commercial Bus. Sys. v. Halifax Corp., 253 Va. 292, 301, 484 S.E.2d 892, 897 (1997)); X-IT Prods., L.L.C. v. Walter Kidde Portable Equip., Inc., 155

F. Supp. 2d 577, 653 (E.D. Va. 2001) (Doumar, J.); Williams v. Reynolds, No. 4:06cv20, 2006 U.S. Dist. LEXIS 79178, at *14-18 (October 31, 2006) (Kiser, J.) (unpublished) (dismissing for failure to state a claim a tortious interference count for neglecting to establish a probability of future economic benefit); Government Employees Ins. Co. v. Google, Inc., 330 F. Supp. 2d 700, 705 (E.D. Va. 2004) (Brinkema, J.) (dismissing for failure to state a claim a tortious interference count as "too broad and conclusory to plead a specific, existing contract or expectancy with a specific party"); McDonald's Corp. v. Turner-James, Civil No. 05-804, 2005 U.S. Dist. LEXIS 42755, at *13 (E.D. Va. November 29, 2005) (Lee, J.) (unpublished) (dismissing tortious interference allegation for failure to state a claim for not asserting "facts upon which they can claim that it is probable that a contract would have been signed, but for the Plaintiff's alleged interference") (citing Halifax Corp., 253 Va. at 301, 484 S.E.2d at 301-02).

Defendants cite McDonald's Corp., 2005 U.S. Dist. LEXIS 42755, at *14, and Childers Oil Co., Inc. v. Exxon Corp., 960 F.2d 1265, 1271 (4th Cir. 1992), for the proposition that "tortious interference claims lie only against a party that is a stranger to the relationship." Doc. 14 at 16. However, the opinion in Childers Oil construes a tortious interference claim based on the law of West Virginia, citing an opinion from the Supreme Court of Appeals of West Virginia, Torbett v. Wheeling Dollar Sav. & Trust Co., 173 W. Va. 210, 217, 314 S.E.2d 166, 173 (1983). While the United States District Court in Alexandria applies the statement of law in Childers Oil broadly to a case involving Virginia law, the Court is aware of no other similar precedent infusing the Virginia law of tortious interference with West Virginia requirements. McDonald's Corp., 2005 U.S. Dist LEXIS 42755, at *14-15. To the contrary, other precedents

concerning Virginia law indicate a cause of action for tortious interference is proper against "a competitor seeking an advantage," but not against "a party to the relationship acting in its own economic interests to limit liability." DRC, Inc. v. Custer Battles, LLC, No. 06-1591, 2007 U.S. App. LEXIS 11518, at *14 (4th Cir. May 16, 2007) (unpublished) (citing Zoby v. American Fid. Co., 242 F.2d 76, 80 (4th Cir. 1957) (stating a tortious interference claim involves "a competitor seeking his own advantage by causing the breach of another's contract")). Accordingly, under the governing Virginia law opinions of the Fourth Circuit, a tortious interference claim is properly asserted against a "competitor seeking his own advantage by causing the breach of another's contract" or expectancy. Zoby, 242 F.2d at 80; DRC, 2007 U.S. App. LEXIS 11518, at *14.

### B. Defendants' Arguments

Defendants argue Plaintiff's claim of Tortious Interference fails because it does not (1) allege an objective expectation of future business, rather stating a speculative hope; (2) allege improper methods of interference; and (3) allege that Defendants are in the proper third party relationship to the affected expectancy. Doc. 14 at 14-16.

### C. Analysis

The Amended Complaint alleges:

> ETGI and Otto have, intentionally, maliciously and without justification, and with knowledge of contractual relations or prospective contractual relations between Rescue Phone and buyers or potential buyers, interfered with the contractual relations or prospective contractual relations by stating that ETGI and/or Otto would pursue infringement claims against purchasers and end users based upon the '240 patent.

Doc. 11 at 13. Additionally, Plaintiff asserts "[i]n August of 2006 Rescue Phone was named by the United States State Department under the FEDBID system, implemented in

July 1, 2006 to bid on a State Department contract." Doc. 11 at 14.  Under the bid system, competitors of Rescue Phone, who was named in the bid request, were required to be "the equivalent of a brand name product provider at lower price than Rescue Phone's bid." Doc. 11 at 14.  ETGI submitted a bid stating it was "the brand name or equal of Rescue Phone, . . . included information in its application that it had a valid and superior product based upon its Patent," and made "false pretenses" which affected Rescue Phone's business with potential purchasers. Doc. 11 at 14.  Plaintiff asserts Defendants made "statements to customers in the relevant marketplace that Rescue Phone does not have the right to sell its products in violation of ETGI's patent." Doc. 11 at 12. Plaintiff incorporates allegations regarding Defendants' improper conduct stated elsewhere in the Amended Complaint. Doc. 11 at 15.  Regarding causation, Rescue Phone states "[i]t is reasonably certain that Rescue Phone would have realized these business relationships in the absence of ETGI and Otto's conduct in violating the statutes alleged herein" and notes "Rescue Phone [suffered] approximately $229,770 in lost profits for the Contract which was obtained through false pretense by ETGI." Doc. 11 at 14-15.

1. *Objective Expectation of Future Business*

Under the Tortious Interference claim, the Plaintiff must assert facts which show or allow the reasonable inference that Defendant's wrongful conduct induced or caused Plaintiff to fail to realize the economic benefit of the sought after relationship.  Jenkins, 395 U.S. at 421-22; Commerce Funding, 249 F.3d at 210.  Mere speculation or hope of the intended benefit is insufficient.  Halifax Corp., 253 Va. at 301, 484 S.E.2d at 897. Plaintiff's expected business opportunities with the "unnamed customers in the

marketplace" are insufficient to show an objective expectation of receiving a specific business reward.  Doc. 17 at 7; Google, Inc., 330 F. Supp. 2d at 705.

However, Plaintiff has alleged an objective expectation of future business regarding the State Department's bid request.  Initially, Plaintiff specifically alleged the business expectation, as the details of the bid submission are provided, which include the name of the anticipated organization (The State Department), the date of the bid (implemented July 1, 2006), and the fact that Rescue Phone was named in the bid request. Doc. 11 at 14.  Moreover, the request was structured to invite competitors to present proposals comparing their product to Rescue Phone's product in terms of quality and price.  Doc. 11 at 14.  Additionally, Plaintiff makes a plain statement regarding the causal relationship between Defendants' conduct and Rescue Phone's loss, asserts ETGI won the contract through false pretenses, and specifies the loss at $229,770.  Doc. 11 at 14-15. These factual allegations along with their reasonable inferences, in light of a liberal standard of construction, sufficiently allege an objective business expectancy in the State Department contract and Defendants' causal role in the loss.  See Jenkins, 395 U.S. at 421-22; FED. R. CIV. PROC. 8.

### 2. *Failure to Allege Improper Methods*

Defendants correctly state that improper methods must be alleged in the Tortious Interference claim.  Doc. 14 at 15-16.  Because Plaintiffs have alleged "fraud, misrepresentation, or deceit" by Defendants in both securing the patent through misrepresentations to the Patent Office and representing its legitimacy during the bid process through "false pretenses," Plaintiff's claim is not deficient on this ground.  Doc. 11 at 12, 14; Duggin, 234 Va. at 227-28, 360 S.E.2d at 836-37.

### 3. *Defendants Properly Related to the Affected Expectancy*

Defendants argue they were a party to the expectancy in question as they were allowed to and did submit a bid to the United States State Department under the FEDBID system, which forecloses a Tortious Interference claim against them. Doc. 14 at 16. However, it is clear Defendants were competitors of Rescue Phone seeking to better their chances of obtaining the bid. Doc. 11 at 14-15. Therefore, the claim alleges exactly the type of conduct a tortious interference action is designed to thwart. Zoby, 242 F.2d at 80. Accordingly, Defendants' argument is without merit on this point.

## V. Conclusion

For the foregoing reasons, Defendants' Motion to Dismiss is **DENIED**.

The Clerk is **REQUESTED** to mail a copy of this Opinion and Order to all counsel of record.

It is so **ORDERED**.

> /s/
> HENRY COKE MORGAN, JR
> SENIOR UNITED STATES DISTRICT JUDGE

Norfolk, VA
July 2, 2007